**INDIANA DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**Kenneth E. DIXON, Appellee.**

No. 82S01–8907–CV–569.

Supreme Court of Indiana.

July 25, 1989.

Linley E. Pearson, Atty. Gen., David R. Treeter, Deputy Atty. Gen., Indianapolis, for appellant.

Thomas G. Krochta, Vanstone & Krochta, Evansville, for appellee.

ON CIVIL PETITION TO TRANSFER

GIVAN, Justice.

The Court of Appeals reversed a decision of the trial court ordering reinstatement of appellee as an Indiana Department of Highways' employee. *Indiana Dept. of Highways v. Dixon* (1987), Ind.App., 512 N.E.2d 1113. We grant transfer and affirm the trial court.

The issue on transfer is whether an at will public employee may be discharged for commenting upon matters of public concern. We hold that he may not.

The facts are: Kenneth Dixon was a Maintenance Worker IV for the Indiana Department of Highways (DOH) in the Evansville Sub–District. One day after work, Dixon visited the home of Mark Hardaman, a summer DOH employee. He told Hardaman about a possible job opening in the Princeton unit of the department. Dixon said, however, that he had heard DOH supervisors imply that Hardaman would not be hired because he had filed a racial discrimination claim with the National Association for the Advancement of Colored People against DOH.

When DOH management heard about this conversation, they determined that these statements were potentially damaging to the department and warranted further disciplinary action. Dixon's work record indicated that he had progressed through four formal steps of discipline and that the next appropriate step was dismissal. On September 25, 1984, DOH discharged Dixon for violating work rules which proscribed verbal abuse of a supervisor.

The department complaint board heard evidence on the dismissal and determined that Dixon's statements were serious and harmful to the department. The board found that because Hardaman believed what Dixon had told him, he therefore felt compelled to file a racial complaint against the department. Although Hardaman never actually filed this complaint, the board determined that DOH was put in jeopardy and that Dixon's statements warranted dis-

ciplinary action. Based on Dixon's work record, the board upheld his dismissal.

Dixon appealed the outcome of the hearing to the director of DOH. The appeal was denied. Dixon then filed a petition for judicial review under Indiana's Administrative Adjudication Act (AAA).

The trial court found that DOH dismissed Dixon for making off-duty statements about matters of public concern which are protected under the First Amendment. This finding required DOH to prove that these statements had actually harmed the department's operation. The trial court determined, as a matter of law, that such a finding was not supported by sufficient evidence. The trial court ordered Dixon reinstated and remanded the case to the department for a hearing to determine Dixon's back wages.

The Court of Appeals reversed the trial court's decision based on the finding that the trial court lacked subject matter jurisdiction. It reasoned that because Dixon was an at will employee, he was not entitled to a judicial review under the AAA.

DOH argues that Dixon did not file his petition for judicial review within the fifteen day time limit provided in the AAA and therefore the trial court lacked jurisdiction to review the case. Ind.Code § 4-22-1-14(b) (Burns 1986 Repl.)[1]

DOH contends that the time limitation began to run when Anna Jean Seale, Dixon's mother and the resident at his last known address, signed the certified mail receipt on the letter which contained notice of DOH's final decision. Seale, who had signed other certified mail receipts from DOH for Dixon, signed the receipt on March 1. DOH maintains that Dixon's April 2 filing is therefore untimely and he loses all rights to judicial recourse. Dixon counters that he did not receive notice on March 1 but sometime later that month because he no longer lived at the address to which DOH sent the notice.

In an action for judicial review of an administrative determination, statutory compliance is a condition precedent to subject matter jurisdiction in the trial court. *City of South Bend v. Brooksfield Farm* (1981), Ind.App., 418 N.E.2d 305. The provisions concerning time are mandatory and a condition precedent to a court acquiring jurisdiction where review is sought from an administrative determination. *State v. Van Ulzen* (1983), Ind.App., 456 N.E.2d 459.

The statutory language of Ind.Code § 4-22-1-14(b) provided:

"Said petition for review shall be filed within fifteen (15) days after *receipt* of notice that such order, decision or determination is made by any such agency. Notice shall be given in the manner prescribed by section 6 [4-22-1-6] of this act. Unless a proceeding for review is commenced by so filing such petition within fifteen (15) days any and all rights of judicial review and all rights of recourse to the courts shall terminate." (Emphasis added.)

The original wording of this section required a petitioner to file within fifteen days after the contested order, decision, or determination is made by the agency. Ind. Acts 1947, ch. 365 § 14. In 1957, the legislature changed the wording of this section. The new section provided that the petition for review "be filed within fifteen (15) days after *receipt* of notice that such order, decision or determination is made by any such agency." Ind. Acts 1957, ch. 355 § 4. (Emphasis added.) Although no comments accompany these amendments, obviously the legislature was concerned that the time period not begin until the aggrieved party has actual notice of the agency's final decision. The word "receipt" also distinguishes this time period from those which begin on the date when judgment is entered, e.g., Ind.Code § 34-1-2-8 (Burns 1986 Repl.). After reviewing the legislative history of this act, we find that the legislature's use of the word "receipt" in

---

**1.** This Administrative Adjudication Act was repealed by Acts 1986, P.L. 18 § 2, effective July 1, 1987, and replaced by Ind.Code § 4-21.5-1-1 *et* *seq.* (Burns 1986 Repl.). Because these events occurred in 1984, we will apply the old AAA.

starting the time period to run is significant.

In *Solar Sources, Inc. v. Air Pollution Control Board* (1980), Ind.App., 409 N.E.2d 1136, the Court of Appeals held that notice served on a party's attorney was not sufficient notice to start the fifteen day time limitation to run. It based its decision on the agency's failure to comply with Ind.Code § 4–22–1–6's requirements that notice be addressed to the party and sent to its place of business or last place of residence. *Id.* at 1138–39. Because of the Air Pollution Control Board's noncompliance, Solar did not receive actual notice until several days after its attorney did.

DOH, unlike the Air Pollution Control Board in *Solar Sources,* complied with the requirements of Ind.Code § 4–22–1–6. It sent notice by certified mail, addressed to Dixon at his last known place of residence, with return receipt requested. Dixon, however, no longer lived at that address and therefore did not receive notice of DOH's final decision until sometime after Seale signed the certified mail receipt.

Dixon argues that DOH has the burden to establish that he actually received notice on March 1. As explained above, without "receipt" of notice, the time period for filing does not begin. Dixon's petition on its face alleges compliance with the requirements and fulfillment of the conditions precedent embodied in Ind.Code § 4–22–1–14. Furthermore, Dixon signed an affidavit which stated that he did not receive notice on March 1 but sometime later in the month. The only evidence which DOH presents to refute Dixon's contentions is the certified mail receipt which Seale signed.

■ We can analogize the petition for review to a complaint. When a complaint alleges on its face statutory compliance, the moving party in a motion to dismiss has the burden to affirmatively show by affidavit or other evidence that the trial court lacks jurisdiction. *Sekerez v. U.S. Reduction Co.* (1976), 168 Ind.App. 526, 344 N.E.2d 102. DOH was therefore required to come forward with affidavits or other affirmative evidence to establish that Dixon received actual notice on March 1. Because it failed to do this, it did not sustain its burden of proof. The trial court did not err in denying DOH's motion to dismiss for lack of subject matter jurisdiction.

DOH argues that Dixon was an employee at will, and as such, he is not entitled to a hearing or judicial review because he could be fired for any reason or no reason at all. The Court of Appeals agreed with this position and reversed the trial court's decision. Dixon asserts that because he was terminated for exercising a constitutionally protected right, not only did the trial court have jurisdiction pursuant to AAA, but also DOH did not have the right to discharge him for the stated reason.

DOH, in support of its position, points to the statute which excluded from the definition of administrative adjudication "the dismissal or discharge of an ... employee ... but includ[es] hearings on discharge ... for cause where the law authorizes or directs such [a] hearing." Ind.Code § 4–22–1–2.

■ First, judicial review is not restricted to decisions made after an administrative adjudication. Ind.Code § 4–22–1–14. The statute provides that "[a]ny party or person aggrieved by an order or determination made by any such agency shall be entitled to a judicial review thereof...." *Id.* Second, where the legislature intends to preclude judicial review of constitutional claims, its intent to do so must be clear. *Webster v. Doe* (1988), 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632. Finally, in Indiana there exists a constitutional right to judicial review of administrative actions. *State ex rel. State Board of Tax Commissioners v. Marion Superior Court* (1979), 271 Ind. 374, 392 N.E.2d 1161. Therefore, Dixon did have a right to a hearing and judicial review of the department's decision.

■ We next address the issue of Dixon's rights under the First Amendment. The United States Supreme Court has determined that under certain circumstances a public employee may not be fired for

speech. *Pickering v. Board of Education* (1968), 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. The Court has developed a three-part test to determine whether the employee was wrongfully discharged.

First, the employee must be speaking on a matter of public concern about which free and open debate is vital to the decision making of the community. *Id.* at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817. Second, the reviewing court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in running an efficient operation. *Id.* at 568, 88 S.Ct. at 1734–35, 20 L.Ed.2d at 817. Third, the employee's protected conduct must be a motivating factor in the State's decision to fire him. *Mt. Healthy City School District Board of Education v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471.

 We now proceed to apply this test to Dixon's situation. First, race discrimination is a matter of public concern about which we want vigorous and open debate. *See Givhan v. Western Consolidated School District* (1979), 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619. (Teacher could not be fired for privately discussing employment policies and practices which she conceived to be racially discriminatory in purpose or effect.)

 Second, DOH fails to show it was actually harmed by Dixon's statements. The State has the burden of justifying the discharge on legitimate grounds. *Rankin v. McPherson* (1987), 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315. The board only found that Dixon's statements put DOH in jeopardy of having a discrimination claim filed against it and harmed its image. The State cannot base a discharge on possible bad effects or potential harm. To justify its actions, it must make a stronger showing of harm or disruption. *Connick v. Myers* (1983), 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708.

Dispositive of this issue is the Supreme Court's holding in *Rankin.* That case involved a constable's deputy who had been hired for a 90–day probationary period and thus could have been fired for any reason or no reason at all. In a private, on-duty conversation concerning politics, the deputy stated that the next time someone tried to kill the president, "I hope they get him." When Constable Rankin learned of this conversation, he fired the deputy. Rankin argued that the deputy's statement had endangered the efficient functioning of the office and had discredited the office's reputation.

The Supreme Court held that not only did the deputy's statement touch upon a matter of public concern, but it also did not harm the interests of the constable's department despite the main purpose of the office being to enforce law and order. *Rankin, supra,* 483 U.S. at 388–389, 107 S.Ct. at 2899, 97 L.Ed.2d at 327. Therefore, the Court determined that the deputy could not be fired for making this statement.

If the deputy's statements in *Rankin* were protected, *a fortiori,* Dixon's statements are protected. As in *Rankin,* there exists no close working relationship between Dixon, a maintenance worker, and management that this statement disrupted. Furthermore, we think that it is important to note that Dixon's statements were made off-duty, in a private conversation. "A purely private statement on a matter of public concern will rarely, if ever, justify discharge of a public employee." *Id.* at 388 n. 13, 107 S.Ct. at 2898 n. 13, 97 L.Ed.2d at 327 n. 13.

Finally, at the hearing, the complaint board concluded that Dixon's statement warranted disciplinary action and, based on his previous work record, the next step was dismissal. Federal courts have interpreted the Supreme Court cases to mean that the employer may neither fire the employee for this protected conduct, nor impose milder disciplinary action. *American Postal Workers Union v. United States Postal Service* (D.C.Cir.1987), 830 F.2d 294. (Postal worker could not be denied full back pay for writing an editorial in the union newsletter.)

Furthermore, Dixon's statements are protected even though they may have been false. In *Pickering,* the Court determined that absent a showing that the statements were knowingly or recklessly false, the mere fact that they were false cannot be the basis of an employee's dismissal. *Pickering, supra* at 574–75, 88 S.Ct. at 1738, 20 L.Ed.2d at 821. Even if there were such a showing, absent actual and significant harm, such statements may be protected. *Brasslett v. Cota* (1st Cir.1985), 761 F.2d 827.

We therefore hold that the State may not fire or discipline one of its employees for making statements if the speech meets the three-part test described in this opinion.

DOH argues that Dixon waived his First Amendment claim by not raising it at the agency level or specifically alleging it in his petition for review. DOH asserts that it was prejudicial error for the trial court to consider this claim because the agency was never presented an opportunity to address the issue.

Dixon points out that this Court has held that a petitioner's claims of a constitutional nature need not be presented to an agency as a precondition to judicial review. *Wilson v. Board of the Indiana Employment Security Division* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101.

The fundamental purpose of a petition for judicial review is analogous to that of pleadings. It informs each party of the other's position so that each can properly prepare for trial. *Yunker v. Porter County Sheriff's Merit Board* (1978), 178 Ind. App. 364, 382 N.E.2d 977.

Pursuant to Ind.Code § 4–22–1–14(a) (Burns 1986 Repl.), a petition for review must specifically allege in what way the agency's decision is:

"(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence."

Dixon's petition alleged that DOH's decision was in excess of statutory authority and not supported by substantial evidence. We do not see how DOH was prejudiced by Dixon's failure to further elaborate. It was clear early in the proceeding as to the parties' disagreement, and DOH had ample opportunity to brief and argue this issue before the trial court. The findings of the department complaint board address the issues of Dixon's speech; thus the sole issue is covered by the First Amendment. DOH did not produce any authority to support its position that it could discharge an at will employee for making statements which it deemed inappropriate. We find no authority for such a position. The trial court did not err in considering Dixon's First Amendment claim.

DOH contends that the trial court did not have the authority to reinstate Dixon. It argues that the trial court substituted its judgment for that of the agency on the question of whether Dixon was properly discharged. Dixon counters that the trial court ordered the only remedy available.

The board determined that Dixon could be dismissed for making certain statements. The trial court determined, as a matter of law, that Dixon's statement touched upon a matter of public concern and therefore the department had to show actual harm. Because we have determined that DOH did not show adequate harm, we agree with the trial court that DOH's decision was not supported by substantial evidence.

The trial court has authority to "order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed." Indiana

Code § 4–22–1–18(c) (Burns 1986 Repl.). The trial court must make its determination to set aside the agency's order as a matter of law. *Indiana State Highway Commission v. Zehner* (1977), 174 Ind.App. 176, 366 N.E.2d 697. The trial court set aside DOH's decision to fire Dixon by ordering the agency to reinstate him. If he could not have been fired, then, in effect, he should have been working for the agency during those years. The trial court's finding concerning Dixon's First Amendment rights was a finding of law applied to the facts. The trial court did remand the only remaining factual issue to the administrative board for its determination. Therefore, the trial court did not err in reinstating Dixon and remanding the cause to the agency for determination of his back wages.

The Court of Appeals' decision is vacated. The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, J., concur.

DICKSON, J., dissents with separate opinion in which PIVARNIK, J., concurs.

DICKSON, Justice, dissenting.

I am unable to join the majority because of each of the following issues: 1) applicability of the Administrative Adjudication Act; 2) timeliness of filing of Dixon's petition for review; and 3) waiver for failure to raise constitutional claim in petition.

### 1. Applicability of the AAA

The Administrative Adjudication Act (AAA) (repealed effective July 1, 1987) established "a uniform method of administrative adjudication by all agencies of the state of Indiana ... [and] a uniform method of court review of all such administrative adjudication." Ind.Code § 4–22–1–1. Indiana Code § 4–22–1–2 excludes from the definition of "administrative adjudication"

"the dismissal or discharge of an officer or employee by a superior officer, but includ[es] hearings on discharge or dismissal of an officer or employee for cause where the law authorizes or directs such hearing." The Court of Appeals correctly determined that the Department's regulations did not provide for judicial review of Dixon's dismissal.

Indiana Code § 4–22–1–14(a) provides that "[a]ny party or person aggrieved by an order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provisions of this chapter." A few cases hold that judicial review under this section covers all "administrative orders, decisions, or determinations not clearly and unambiguously excepted therefrom," regardless of whether the agency action was excluded from "administrative adjudication." *Warram v. Stanton* (1981), Ind.App., 415 N.E.2d 114, 116. *Accord Zehner v. Indiana State Alcoholic Beverage Comm'n* (1977), 173 Ind.App. 600, 364 N.E.2d 1037 (relying on *State ex rel. Calumet Nat'l Bank v. McCord* (1963), 243 Ind. 626, 189 N.E.2d 583, which construed earlier AAA). These cases, however, fail to recognize that the plain language of § 4–22–1–1 restricts the applicability of the AAA to judicial review of all "administrative adjudication," which does not include, under § 4–22–1–2, certain employee dismissals.[1]

The non-applicability of the AAA does not leave an aggrieved person without recourse to judicial review of administrative action. *See Suttmiller v. City of Batesville* (1967), 248 Ind. 391, 393, 226 N.E.2d 893 (in absence of statutory provision for review, an action for declaratory or injunctive relief will lie). Further, the constitutional right to review of administrative action exists to the extent necessary to ensure due process protection of property and liberty interests. *See Warren v. Indiana*

---

1. Furthermore, *State ex rel. Calumet Nat'l Bank v. McCord* (1963), 243 Ind. 626, 189 N.E.2d 583, involved a license *application* proceeding excepted from the act in § 63–3024, not an "administrative adjudication" exclusion under § 4–22–1–2's predecessor, § 63–3003. The *McCord* court determined that, while the license application proceeding was excepted from the act, the agency's final order was not specifically excepted under § 63–3024.

*Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399. *See generally Wilson v. Board of Indiana Employment Security Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (interests meriting due process protection).

This Court should conclude that the employee Dixon does not have a right to review of his dismissal under the AAA.

### 2. Timeliness of Filing

Even if Dixon's discharge was reviewable under the AAA, his claim would fail because he did not timely file his petition for judicial review. The petition for judicial review must be filed within fifteen days after the "receipt of notice" of the agency's "order, decision, or determination." Ind.Code § 4–22–1–14(b). Subsection 14(b) requires notice to be given as directed in § 4–22–1–6, which provides that notice be sent "in writing by registered or certified mail with return receipt requested, addressed to the person or persons against whom an order or determination may be made at their last known place of residence, or place of business." Given the specific form of notice prescribed by the legislature, "receipt of notice" should be read to mean the date on which notice arrives at the last known address and is accepted.

In full compliance with the statute, the Department sent notice by certified mail to Dixon's last known address. On March 1, 1985, Dixon's mother accepted the notice as she had done for him on other occasions.[2] Because receipt occurred on March 1, the filing of Dixon's petition on April 2 was not within the fifteen-day time requirement. His untimely filing left the trial court without subject-matter jurisdiction to hear his case under the AAA.

If, as Dixon claims, the date of actual receipt of notice starts the fifteen-day period, his petition was still not timely filed. Dixon claimed that he did not actually receive the notice "until some later date in March 1985, the exact date of which was unknown to him at [the] time."

Alleging Dixon's failure to timely file the petition, the Department made a motion to dismiss under Trial Rule 12(B)(1) for lack of subject-matter jurisdiction.

"When a trial court is confronted with a motion to dismiss under Rule TR 12(B)(1), it must, then, decide upon the complaint, the motion, and any affidavits or other evidence submitted whether or not it possesses the authority to further adjudicate the action." *Cooper v. County Board of Review of Grant County* (1971), 150 Ind. App. 232, 237, 276 N.E.2d 533, 536. In reaching its decision, the trial court may weigh the evidence. *Id.* Where the complaint on its face alleges compliance with the statutory basis for subject-matter jurisdiction, the movant must show by affidavit or evidence that jurisdiction is lacking. *Sekerez v. U.S. Reduction Co.* (1976), 168 Ind.App. 526, 344 N.E.2d 102 (movant merely denied allegations of jurisdiction).

Dixon's complaint alleged compliance with § 4–22–1–14, the prerequisite to judicial review of an agency action. The Department presented evidence that receipt occurred on March 1 when Dixon's mother accepted the notice for him. Even if the date of actual receipt is controlling, the trial court could conclude that it had subject-matter jurisdiction only if Dixon presented some evidence that his receipt was within the fifteen days prior to his filing on April 2. Dixon's lone statement that receipt occurred at "some later date in March" is insufficient to show his compliance with the statute's time requirements.

Regardless of whether arrival of notice or actual notice is controlling, the trial

---

**2.** In February 1985, Dixon received a letter from an employment relations officer which advised him of his right to have the DOH director review his dismissal. This letter, dated February 8, 1985, was addressed to the same address as the one that arrived on March 1, which informed him of the director's decision. The con-

tent of the March 1 letter makes it clear that Dixon responded to the February 8 letter. The majority's approach would reward an interested or aggrieved person who is not responsible enough to advise the agency involved of a change in address. Deceptive manipulation is also invited.

court lacked subject-matter jurisdiction of the claim brought under the AAA.

### 3. Waiver for Failure to Raise Claim

Dixon's petition for review listed the grounds for review under § 4–22–1–14(a) almost verbatim. Specifically, the petition alleged that the Complaint Board's determinations "were made without observance of procedures as required by the Employees Handbook" and were "not supported by substantial evidence." The petition made no mention of a constitutional claim. To the contrary, the petition only omitted one of the grounds for review under subsection 14(a): that the agency action was "[c]ontrary to constitutional right, power, privilege, or immunity." Ind.Code § 4–22–1–14(a)(2).

In his response to the Department's motion to dismiss for untimely filing, Dixon did not mention the constitutional claim. After the Department filed in November 1985 a Trial Rule 12(b)(6) motion which stated that Dixon "failed to present a statutory right to a hearing or a [due process] cognizable property interest," Dixon responded without elaboration that he was discharged for exercising a "protected right." In February 1986, the trial court granted the Department's motions and dismissed Dixon's petition.

Even Dixon's motion to correct errors, which the trial court granted on other grounds, made no mention of the constitutional claim.

The failure to allege a constitutional issue in the petition for review waives that issue on appeal. *Clarkson v. Dept. of Insurance* (1981), Ind.App., 425 N.E.2d 203, 206. *See Linville v. Shelby County Plan Comm'n* (1972), 258 Ind. 467, 281 N.E.2d 884 (constitutional issue not reviewable on appeal where it was not before trial court under the pleadings). Not only did Dixon fail to raise the constitutional claim in his petition, but he failed to raise it before the trial court dismissed his petition. Apparently, the majority thinks a constitutional claim is an ace worth concealing. The case on which the majority relies, *Wilson v. Board of Indiana Employment Security Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, held that a person need not exhaust his administrative remedies where he challenges the constitutionality of the agency's procedures. However, *Wilson* does not relieve Dixon of the obligation of raising his constitutional claim in his petition for review. I would find that the constitutional issue was waived.

I dissent.

PIVARNIK, J., concurs.