**John LACH, Appellant–Plaintiff,**

v.

**LAKE COUNTY, Indiana,
Appellee–Defendant.**

**No. 56A03–9302–CV–47.**

Court of Appeals of Indiana,
Third District.

Sept. 20, 1993.

Transfer Denied Dec. 29, 1993.

John F. Kautzman, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for appellant-plaintiff.

Edward H. Feldman, Highland, for appellee-defendant.

HOFFMAN, Judge.

Appellant-plaintiff John Lach appeals the trial court's decision affirming the action of

the Lake County Sheriff's Department Merit Board (Board or Lake County).

The evidence relevant to the appeal discloses that in May 1990, when disciplinary proceedings were instituted against Lach, he was a full-time, non-probationary, 28–year member of the Lake County, Indiana Sheriff's Department who had achieved the rank of lieutenant. Based upon two letters written by Lach and published in two Lake County newspapers, Lake County Sheriff Stephen R. Stiglich filed with the Board seven charges of misconduct against Lach.

After a hearing in November 1990, the Board found that Lach had violated two interdepartmental rules. A 20–day suspension without pay was ordered by the Board. Pursuant to IND.CODE § 36–8–10–11 (1988 Ed.), Lach petitioned for judicial review of the Board's decision.

The court determined that the decision of the Board was just and proper. This appeal ensued.

On review Lach contends that, for a variety of reasons, the trial court erred in finding the Board's decision proper. The dispositive issue is: whether Lach's letters constituted protected speech for which a public employee is not subject to disciplinary action by his employer.

■ The standard by which public employees' protected speech [1] is determined was set out in *Campbell v. Porter County Bd. of Com'rs* (1991), Ind.App., 565 N.E.2d 1164, 1167:

> "The law is clear that public employees do *not* abandon their First Amendment rights upon entering the work place. '[A] State cannot condition public employment on a basis that infringes the employee's constitutionally protected inter-est in freedom of expression.' As noted in *Connick* [*v. Myers* (1983) ] [461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708], the First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. '[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.' Accordingly, the U.S. Supreme Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the heirarchy of the First Amendment values,' and is entitled to special protection.

> A three-part test for determining whether an employee was wrongfully discharged for 'speech' was developed in *Connick*. This test was recently discussed by the Indiana Supreme Court in *Indiana Department of Highways v. Dixon* (1989), Ind., 541 N.E.2d 877, 881 as follows:

>> 'First, the employee must be speaking on a matter of public concern about which free and open debate is vital to the decision making of the community.

>> Second, the reviewing court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in running an efficient operation. Third, the employee's protected conduct must be a motivating factor in the State's decision to [discipline the employee].' [Citations omitted.]" (Emphasis in original.)

*Id.* at 1167.

Focusing on the first prong of the test, this Court in *Campbell* clarified the type of speech which will qualify as speech "on a

---

1. As noted by Chief Justice Shepard in *Second Wind for the Indiana Bill of Rights*, 22 Ind. L.Rev. 575, 581 n. 39 (1989), the free speech guarantees of the Indiana Constitution are not superfluous when measured against those provisions in the United States Constitution. Justice Shepard wrote:

 "The first amendment's guarantee of political freedom provides that 'Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.' U.S. CONST. amend. I. The Indiana Constitution provides 'No law shall be passed restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.' IND. CONST. art. I, § 9."

 *Id.* Lach correctly asserts that the Indiana Constitution more jealously protects freedom of speech guarantees than does the United States Constitution.

matter of public concern about which free and open debate is vital to the decision making of the community." *Id.* As reiterated in *Campbell:*

> "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a ... court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.
>
> \* \* \* \* \* \*
>
> While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. [Citations omitted.]"

*Id. quoting Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.

■ The purpose of the letters in the present case written by Lach and published by the newspapers[2] was to educate the public regarding candidates for political office during a campaign. Unlike the criticism of superiors in *Campbell* which was found not to address matters of public concern, Lach's letters criticized a candidate for public office and supporters of the candidate regarding, *inter alia,* qualifications. Lach's letters were in response to those offered by supporters of the candidate and revealed Lach's support for another named candidate. It is crucial to Lach's position that the statements were directed to the public regarding an *elected* official during a campaign for political office. Although the evidence reveals that the Sheriff's Department did not have in place an avenue

for reporting such statements within the department, such a consideration is of no moment in the First Amendment context. The First Amendment protections here concern Lach's desire to effect political change through the electoral process. Under the *Connick* test, Lach's speech concerned a matter of public interest "about which free and open debate is vital to the decision making of the community." *See id.*

The second component requires a balancing of the interests of the employee and the employer. Lake County asserts that even if the speech concerned a matter of public interest, Lach should have been disciplined because "there is a need for maintaining discipline and morale in the Sheriff's Department;" a need for confidentiality due to the "sensitive nature of the work;" and the comments "have a tendency to inhibit the proper performance of [Lach's] duties as well as make it difficult for him to supervise other officers under his command."

The court below found that "[i]t is clearly not unreasonable to infer that the letters to the editors did 'affect the morale and working conditions of the Lake County Police Department' by discrediting the department's leadership." However, at the hearing, Lake County was unable to produce any witness who definitively stated that Lach's comments undermined morale or discipline. However, Lach produced witnesses who stated that no such problem occurred. The court below erred by inferring, without support in the record, that Lach's speech affected the morale and working conditions of the department. Similarly, Lake County does not cite evidentiary support in the record for a determination that the letters jeopardized confidentiality necessary to the department's operation or Lach's performance of his duties.

Pursuant to statute:

> "A county police officer may not be dismissed, demoted, or temporarily suspended because of political affiliation nor after the officer's probationary period,

---

**2.** The full text of the letters is set out in the Appendix to this opinion.

except as provided in this section. An officer may:

(1) be a candidate for elective office and serve in that office if elected;

(2) be appointed to an office and serve in that office if appointed; and

(3) except when in uniform or on duty, *solicit votes or campaign funds for the officer or others.*" (Emphasis added.)

IND.CODE § 36–8–10–11(c) (1988 Ed.).

 Moreover, statements by public employees regarding matters of public concern "must be accorded First Amendment protection despite the fact that the statements are directed at their nominal superiors." *Pickering v. Board of Ed.* (1968), 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (case also included questions of false statements made by teacher in letters to editor, which question is not presented here). Precisely because human nature disdains criticism of one's actions and because superiors, when allowed unbridled latitude, are uniquely capable of causing retributive action to be taken against an employee, the free speech guarantees of the Constitutions of Indiana and the United States demand that a governmental body demonstrate the necessity for squelching speech on matters of public concern. Lake County failed to make such a showing.

The final component to the *Connick* test, whether the protected speech forms the basis for the disciplinary action, is uncontested by the parties. When the sheriff preferred the charges against Lach, the letters were the stated cause of the disciplinary proceedings. The Board and the court below found that such was the case.

Under the circumstances, the disciplinary action against Lach was improper. The letters constituted political speech on matters of public concern. The letters were written during a campaign for elected office to refute comments by supporters of one candidate and to bolster support for another candidate. Further, Lake County failed to demonstrate a compelling reason for the disciplinary action when balanced against the First Amendment interests of Lach. Indiana's Constitution, statutory provisions, and common law require a finding that Lach's statements constituted protected speech for which Lach was improperly disciplined.

The judgment of the court below is reversed, and the matter is remanded for an order consistent with this opinion.

Reversed and remanded.

GARRARD and ROBERTSON, JJ., concur.

H-6 Sunday, April 15, 1990

## Opinion

# READERS' FORUM
Preference given to letters of 250 words or fewer. Please include your telephone number.

## Allen's letter called partisan politics

Upon reading an article appearing April 6 in The Times' "Readers Forum," Gary City Councilman Clemmons Allen Jr. criticized Dr. Daniel J. Thomas for running for Lake County sheriff in the May primary election.

Nowhere in Mr. Allen's letter did he mention that he was hired by Sheriff Stiglich as a special deputy assigned to the internal affairs division of the sheriff's department.

If my recollection is correct, prior to the 1986 primary election I heard on a radio broadcast that Clemmons Allen Jr. was thinking about running for the sheriff's office himself, but evidently had a change of mind. Can it be that he was offered a job by Stiglich in return for not filing at that time?

To enlighten the public, Clemmons Allen Jr., along with his sidekick former East Chicago policeman Dusan Grozdanich, are assigned to a division that for administration purposes should have been named Ticket Master instead of Internal Affairs. For most working people around the department they can be assured of seeing this dynamic duo (Allen and Grozdanich) at least twice a month — payday.

So one might ask: What internal affairs investigations are conducted? Can it be the majority of the time these two individuals are supposed to be conducting internal affairs investigations at the taxpayers' expense are being sent to sell fund-raiser tickets, politic or send rhetorical letters to local newspapers for the sheriff?

So it stands to reason why Mr. Allen has such a concern for the primary election results. When Dr. Daniel Thomas wins, Mr. Allen an his sidekick Grozdanich might be out of their no-accountability jobs.

*Lt. JOHN R. LAC*
*Lake County Police Departme*

Stiglich is supposed to be in the forefront in the local war on drugs. Yes, just six months ago, Stiglich and Prosecutor Jon DeGuilo held hands in the red-ribbon week with the slogan "partners in prevention."

Yes, it was nearing Stiglich's re-election bid. The question I have is where was Stiglich and his concern during the four years that Jack Crawford was prosecutor?

Mentioning falsehoods and rhetoric statements, Stiglich's radio commercials state that "No longer are county police officers forced to sell or buy political fundraiser tickets, or get involved in politics." First of all, no county police officer was forced to sell or buy tickets. As for getting involved in politics, I myself have put up many campaign signs for Daniel Thomas because I believe that the department needs new leadership.

Stiglich might have been East Chicago police chief for 10 years, but how much of that time was occupied by being chauffeur to Mayor Robert Pastrick? You can make your own guess why department morale is at an all-time low. In the May primary election, Thomas is the candidate to elect on the Democratic ticket. He will be a full-time sheriff, not just at election time.

John R. Lach
Merrillville

## A full time sheriff

The recent endorsements of Stephen Stiglich by local newspapers just shows how much the editorial staff is out of touch with reality. I have been a Lake County police officer for 28 years and still work there.