Edward M. KLUNK, Plaintiff–Appellant,

v.

COUNTY OF ST. JOSEPH, Peter J. Nemeth, Judge, individually and in his official capacity as Judge of St. Joseph Probate Court, and Thomas N. Frederick, individually and in his official capacity as Director of Court Services, Defendants–Appellees.

No. 98–2039.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1998.

Decided March 19, 1999.

Ivan E. Bodensteiner (argued), Valparaiso, IN, for Plaintiff–Appellant.

James A. Masters (argued), Nemeth, Feeney & Masters, South Bend, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, and BAUER and MANION, Circuit Judges.

MANION, Circuit Judge.

Judge Peter J. Nemeth of the St. Joseph County Probate Court and Thomas N. Frederick, Director of Court Services, terminated Edward M. Klunk, an employee of the St. Joseph County Juvenile Probation Department, after Klunk announced he intended to run for a position on the Board of Trustees of the South Bend Community School Corporation (the "School Board"). Klunk sued St. Joseph County and his supervisors in the Northern District of Indiana for violating the First Amendment and the Indiana Constitution. The district court granted judgment as a matter of law to the defendants, holding that the Juvenile Probation Department's interests in efficiency and avoiding conflicts of interest outweighed Klunk's free speech interests. Moreover, the district court found that Indiana law and federal law involve the same legal inquiry, and granted judgment as

a matter of law on the Indiana constitutional claim as well. We affirm.

## I.

In 1974 Klunk began working for the St. Joseph County Juvenile Probation Department as a probation officer. By 1982 Klunk had become an intake officer, and thereafter became the Director of Intake. Intake officers initially determine whether a juvenile accused of a crime should be prosecuted, and if so, they appear as prosecutors at the initial hearings. Frederick testified that intake officers are a hybrid between police officers and prosecutors, and specialize in juvenile crime. As Director of Intake, Klunk was the third highest-ranking official in the department. He reported to the Director of Probation, who in turn reported to defendant Frederick, the Director of Court Services, and ultimately to Judge Nemeth, who, as Judge of the St. Joseph County Probate Court, ran the Probation Department.[1]

On August 24, 1994, Klunk informed Frederick that he was contemplating running for the St. Joseph County School Board. School Board membership is only part-time, so Klunk intended to keep his position with the Juvenile Probation Department. Frederick immediately expressed concern over a conflict due to the time commitment involved. He also suggested that Klunk advise Judge Nemeth of his possible candidacy. While Klunk was unable to reach Judge Nemeth, Frederick managed to do so. The next day, Frederick told Klunk that Judge Nemeth thought that School Board membership would present a conflict of interest as Klunk would be perceived as representing the interests of the Juvenile Probation Department while serving on the School Board. The day after that, Klunk filed his candidacy papers, and then informed Frederick that his candidacy was official. Frederick stated that he was unhappy that Klunk had decided to pursue this candidacy despite Frederick's discouragement.

The following Monday, just five days after Klunk announced his intention to run for the

School Board, Judge Nemeth called Klunk to his chambers. He asked for Klunk's resignation, and refused to state why. Rather, he maintained that Klunk served at the Judge's pleasure, and that he no longer wanted to employ Klunk.

Klunk lost his bid for School Board membership. He then brought this action against St. Joseph County, Judge Nemeth and Frederick. He claims that he was terminated in retaliation for running for School Board membership, in violation of the First Amendment and the Indiana Constitution's analogue, Article I, Section 9. The case was tried to a jury, but at the close of the plaintiff's presentation of evidence, the district court granted the defendants judgment as a matter of law, based on the test created by the United States Supreme Court in *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This test weighs the interests of the government providing services to its citizens against the employee's interest in protected speech. The district court found that the Director of Intake serves in a position of trust and confidence with respect to the Juvenile Probation Department. Moreover, the district court noted that whether Klunk advocated views consistent with, or at odds with, department policy, the department would be ill served. If Klunk were to advocate views harmonious with the department, he would be perceived as taking orders from Judge Nemeth. And if Klunk were to disagree with the department, the department's viewpoint would be undercut by not having the support of its own employee. The district court also found that the Indiana Constitution offered the same protection as the First Amendment, and therefore, the First Amendment ruling was equally applicable to this claim. Finally, the district court denied the due process claim, finding that Klunk did not have a property interest in his employment. Klunk has appealed only the First Amendment and Indiana Constitution Art. I, § 9 claims.

---

1. The Probate Court has exclusive juvenile jurisdiction in St. Joseph County, and as the judge of the Probate Court, Judge Nemeth has firing authority over the staff of the Juvenile Probation Department. Ind.Code 11–13–1–1(c).

## II.

### A. Standard of Review

▉▉▉ Judgments as a matter of law are reviewed by appellate courts in the same fashion as summary judgment motions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review the conclusions of the district court *de novo*, taking the evidence in the light most favorable to the non-moving party. *Continental Bank N.A. v. Modansky*, 997 F.2d 309, 312 (7th Cir.1993); *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1471 (7th Cir.1993). Judgment should be entered under Rule 50(a) only where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. First Amendment

▉▉▉ In prosecuting a claim of retaliation under the First Amendment's Free Speech clause, the district court must resolve four issues. The first is that the speech must be on a matter of public concern. *See, e.g., Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). If the speech addresses a matter of public concern, the employee must show that the protected speech caused, or at least played a substantial part in, the employer's decision to terminate, or take any other adverse employment action against, the plaintiff. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The district court must then consider the *Pickering* balancing test. This test involves weighing the employee's First Amendment interest against the government's interest, as an employer, in efficiently providing government services through its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Finally, the defendant can still prevail if he can show that he would have terminated the employee even in the absence of the protected speech. *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. 568. The plaintiff must carry the burden of proof for the first two elements; the government has the burden for the last two. *See id.* at 287, 97 S.Ct. 568; *Glass v. Dachel*, 2 F.3d 733, 744 (7th Cir.

1993) (government must prove balancing test).

▉▉▉ On appeal, Klunk first contends that the district court erred in reaching the *Pickering* balancing test, because both Judge Nemeth and Frederick denied that Klunk's candidacy was a factor motivating his dismissal. Klunk contends that if the defendants deny terminating him for his protected speech—and they do—then the *Pickering* balancing test cannot be applied. Rule 50(a) states:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a). Thus, the rule clearly contemplates that a factual dispute regarding one element of a claim or defense will not bar judgment as a matter of law if there is no legally sufficient evidentiary basis to support the other elements of the claim or defense.

The Eleventh Circuit addressed this procedural issue in *Vista Community Serv. v. Dean*, 107 F.3d 840, 845 (11th Cir.1997). Under facts similar to this case, the district court refused to grant summary judgment based on a defense of qualified immunity. "Because Defendants claimed that they fired Plaintiff for reasons *unrelated* to his speech, the court declined to apply *Pickering* to the facts of this case." *Id.* (emphasis in original). The appellate court reversed, holding that "[i]n those cases where the employer's claimed reasons are unrelated to the speech, we still apply the *Pickering* balancing test." *Id.* We see no meaningful distinction between *Vista* and this case.

This result is also consistent with this circuit's case law. For example, in *Button v. Kibby–Brown*, 146 F.3d 526 (7th Cir.1998), we affirmed the granting of judgment as a matter of law pursuant to Rule 50(a) on a First Amendment retaliation claim. We held that the employee's speech did not relate to a

matter of public concern, and we did so without reaching the issue of the employer's motivation. *Id.* at 529–31.

In support of his argument, Klunk quotes from *Wright v. Ill. Dept. of Children & Family Serv.*, 40 F.3d 1492, 1499 (7th Cir.1994): "The proper approach is to apply the appropriate legal standard to each instance of speech *for which Wright was allegedly punished* to determine its protected status." (Emphasis added by Klunk.) He argues that this phrase means that only after the jury resolves the factual issue regarding the defendants' motives for firing Klunk, may the court address the *Pickering* test. But if *Wright* held that, the word "allegedly" in the above quote would be out of place. Rather, in *Wright* we endorsed the same procedure used by the district court in this case: We found a question of fact regarding whether *Wright* was terminated for three instances of protected speech, and went on to analyze these claims to see if they would survive a *Pickering* analysis. *Id.* at 1502–07. We find no error in the district court's consideration of the *Pickering* test, despite a fact question remaining on causation.

 Turning to the issue of whether the district court applied the *Pickering* balancing test correctly, Klunk maintains that he did not hold a sufficiently high position to warrant losing First Amendment protection, and that he did nothing to raise concerns regarding loyalty and confidence. The *Pickering* balancing test asks whether Klunk's interest in running for School Board outweighs the Juvenile Probation Department's interest in promoting efficiency. To answer this question, we should consider: (1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform his daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public. *See, e.g., Jefferson v. Ambroz*, 90 F.3d 1291, 1297 (7th Cir.1996).

Applying these factors to the facts, the balance weighs in favor of the St. Joseph County Juvenile Probation Department. We have previously held that probation officers hold a position of loyalty and confidence. *Id.* Attempting to distinguish himself from *Jefferson*, Klunk suggests that his job is a cross between a police officer and a prosecutor. We have held that both of these are also positions of loyalty and confidence. *See Livas v. Petka*, 711 F.2d 798, 800–01 (7th Cir. 1983) (prosecutor); *Upton v. Thompson*, 930 F.2d 1209, 1214–15 (7th Cir.1991) (police officer). Even more significant than his job title is his function in the Juvenile Probation Department. Klunk supervises a team of Intake Officers, and this team exercises significant discretion whether and how juveniles are prosecuted. Klunk, as the Director of Intake, is not limited to ministerial duties. Rather, he exercises substantial discretion on a daily basis. *Cf. Larson v. Cantrell*, 974 F.Supp. 1211, 1216–17 (N.D.Ind.1997) (probation officer may be terminated on the basis of political affiliation because of indirect yet meaningful input on discretionary decisions).

We also think that Klunk would not be regarded as a member of the general public when running for or serving on the School Board. Rather, Klunk, a nearly twenty-year veteran of the Juvenile Probation Department and a high-ranking supervisor, would be viewed by the public as promoting the views of the department on the many issues involving juvenile offenders in the school system. To the extent that he took a contrary position, his views would dramatically undermine those of the department. Also of concern would be how Klunk's political role would affect his exercise of discretion as a non-political employee of the court system. And even if Klunk were unaffected, the public could well perceive the opposite. Thus, as the Juvenile Probation Department and the School Board both address issues pertaining to students involved in a variety of offenses, a high-ranking official of the former serving on the latter represents a significant entanglement of the two. We conclude that under Klunk's particular circumstances, the

Juvenile Probation Department's interest in having confidential employees and providing efficient services without the appearance of political considerations outweighs Klunk's interest in serving on the School Board, and by extension, his candidacy for the School Board.

## C. *Indiana Constitution*

Klunk also alleged a supplemental state law claim, alleging that the defendants violated his rights under the Indiana Constitution. Article I, Section 9, of the Indiana Constitution provides that:

> No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

Klunk contends that this provision provides greater protection than the First Amendment; the district court disagreed, noting that no Indiana case established greater protection for government employees under this provision than provided by the First Amendment.

Where state law provides the rule of decision, the federal courts must predict how the highest court of the state would decide the case if presented with the case today. *See McGeshick v. Choucair*, 72 F.3d 62, 65 (7th Cir.1995); *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir.1990). To the extent that the state's highest court has not addressed an issue, we examine the decisions of the lower state courts. *See, e.g., King v. Damiron Corp.*, 113 F.3d 93, 95 (7th Cir.1997).

We first note that the Indiana Supreme Court has not addressed a claim such as Klunk's with regard to the state constitution. In *Price v. Indiana*, the Indiana Supreme Court addressed Art. I, § 9 in the context of a prosecution for disorderly conduct. Price was charged with disorderly conduct (and public intoxication) after loudly berating a police officer in the early morning hours. 622 N.E.2d 954, 960 (Ind.1993). The Supreme Court addressed whether her conviction violated Art. I, § 9. The Court noted that expression is "a core constitutional value" under the Indiana Constitution, on which the government may not impose a "material burden." It then weighed the speaker's interest in political speech with other individuals' rights to order and public peace. It struck a balance between the two by holding that if the speaker merely caused a public nuisance, the lack of a specific injury to any person would preclude a finding of "abuse," and therefore, Art. I, § 9 would protect such expression. However, *Price* also noted that expression does not hold the same "preferred" place under the Indiana Constitution that it does under the United States Constitution and declined to endorse the overbreadth analysis which we apply under the First Amendment. *Id.* at 958.

A subsequent case, *Whittington v. State*, 669 N.E.2d 1363 (Ind.1996), also involved a conviction for disorderly conduct. In this case, Whittington began yelling and shouting after police officers arrived at the scene of a domestic disturbance. The Indiana Supreme Court began its analysis by noting that all expression is protected, but that if the government has a rational basis for curbing speech or expression, that basis will be respected by the courts. *Id.* at 1369. The Court then held that if the expression was political in nature, the State must show that it has not materially burdened the speaker's right to political expression. *Id.* To do so, the State may prove that the freedom of speech was only slightly impaired, or that particularized harm would be inflicted on readily identifiable private interests. *Id.* at 1370.

Thus, we see that in both *Price* and *Whittington*, the Indiana Supreme Court balanced the interests of the private individual in speaking against the State's interests in order and peace. From this methodology, we conclude that the Indiana Supreme Court would also apply a balancing test to Klunk's case, where Klunk's interest in running for the School Board would be balanced against the St. Joseph County Juvenile Probation Department's interests in administering impartial and non-political services.

The Indiana Supreme Court has not yet addressed a situation where the government

employee seeks protection under Art. I, § 9. However, the Indiana Supreme Court applied the *Pickering* balancing test to a First Amendment claim of a government employee in *Indiana Dept. of Highways v. Dixon*, 541 N.E.2d 877 (Ind.1989). The Court held that "the State may not fire or discipline one of its employees for making statements if the speech meets the three part test" developed by the U.S. Supreme Court. *Id.* at 882. But the Indiana Supreme Court did not specifically mention the state constitution. Thus, as the decisions of the Indiana Supreme Court do not specify how it would address a state employee claim under Art. I, § 9, we turn to the decisions of Indiana's lower courts.

The Indiana Courts of Appeals have concluded that the *Pickering* balancing test is equally applicable to the free expression protected under the Indiana Constitution. In *Lach v. Lake County*, 621 N.E.2d 357, 360 (Ind.Ct.App.1993), the appellate court applied the *Pickering* balancing test to a government employee's free expression claim, noting that "Indiana's Constitution, statutory provisions, and common law requires a finding that Lach's statements constituted protected speech for which Lach was improperly disciplined." And in *Davidson v. City of Elkhart*, 696 N.E.2d 58, 61 (Ind.Ct.App.1998), the Court of Appeals stated that the *Pickering* balancing "test has been adopted by the courts of this state." Based on these decisions, we conclude that the Indiana Supreme Court would adopt a balancing test in Klunk's case, and we find persuasive the view of Indiana's lower courts, that the Indiana Supreme Court would apply the *Pickering* balancing test to government employees claiming an infringement of Art. I, § 9 of the Indiana Constitution.

Klunk can point to very little to contradict this conclusion. He notes that in *Lach* the Court of Appeals quoted Chief Justice Randall Shepard of the Indiana Supreme Court, writing in a law review article, in support of the proposition that Art. I, § 9 provides greater protection than the First Amendment. 621 N.E.2d at 358 n. 1. Despite this statement, the *Lach* court applied the *Pickering* balancing test to the facts of the

case. As *Lach* itself did not give any content to the "greater protection" under Indiana's Constitution, we choose to give weight to what *Lach* held rather than to its offhand remark, contained in a footnote, regarding a law review article by one Justice of the Indiana Supreme Court.

Our own research also turned up § 33–1–17–3 of the Indiana Code, which states that: "Except when on duty or acting in an official capacity and except where otherwise provided by state or federal law, a court employee may not be: (1) discouraged from engaging in political activity; or (2) denied the right to choose to refrain from engaging in political activity." This statute, enacted in 1995, about a year after Klunk was terminated, has not yet been addressed by state or federal courts. This text of the statute appears ambiguous: If the phrase "except where otherwise provided by state or federal law" incorporates the *Pickering* test, then the statute is merely descriptive of current law. On the other hand, if the statute is intended to indicate that judicial employees are to be treated as private citizens, Indiana law would provide greater protection than the First Amendment. Regardless of how this ambiguity is resolved in the future, it holds no moment for this case. Klunk was terminated before it existed, and he did not advance this statute before the district court or this court. Moreover, we believe that decisions of the Indiana Court of Appeals are more persuasive than this ambiguous statute, and it does not persuade us that the Indiana Supreme Court would not adopt the *Pickering* test.

Thus, the district court properly granted judgment as a matter of law to the defendants on both the federal and state law claims.

AFFIRMED.