**Stanley DEUITCH and Bryan Deuitch, as personal representatives for the Estate of Juanita Deuitch, deceased, Appellants–Plaintiffs,**

v.

**John FLEMING and Diana Fleming, Appellees–Defendants.**

No. 30A01–0006–CV–211.

Court of Appeals of Indiana.

April 30, 2001.

Rehearing Denied June 20, 2001.

Robert G. Barker, J. Chris Reininga, Barker & Reininga, Indianapolis, IN, Attorneys for Appellants.

Joseph M. Dietz, Meils Thompson & Dietz, Indianapolis, IN, Attorney for Appellees.

## OPINION

BROOK, Judge

### Case Summary

Appellants-plaintiffs Stanley Deuitch ("Stanley") and Bryan Deuitch ("Bryan") (collectively, "the Deuitches"), as personal representatives for the estate of Juanita Deuitch ("Juanita"), appeal the trial court's grant of summary judgment in favor of appellees-defendants John Fleming ("John") and Diana Fleming ("Diana") (collectively, "the Flemings").[1] We reverse and remand.

### Issue

The Deuitches raise several issues for review, one of which is dispositive: whether the trial court erred in granting summary judgment in favor of the Flemings.

### Facts and Procedural History

The facts most favorable to the Deuitches as the non-moving party indicate that John and his father built the Flemings' home in 1983 and installed the gas furnace, water heater, and range. In 1993, a House of Service employee disassembled and reassembled the furnace while installing central air conditioning in the Flemings' home. Except for one other occasion in 1986 when House of Service cleaned and serviced the furnace, John performed all maintenance on the furnace; he is neither an expert in nor licensed in HVAC maintenance. John cleaned and visually inspected the furnace every other year. He would remove the outside cover, "take a brush and brush soot from the—loose from the heat exchanger and vacuum it out, just kind of visually inspect in there with a flashlight and make sure everything looks like it's in pretty good shape and clean." John cleaned and inspected the furnace prior to the heating season of 1997–1998 or perhaps the year before.

On Friday, January 30, 1998, Juanita arrived at the Flemings' home to watch their two children while the Flemings spent the weekend in Chicago. When the

---

1. Stanley is Juanita's ex-husband, and Bryan is Juanita's son. Juanita was Diana's ex- mother-in-law and grandmother to one of the Flemings' two children.

Flemings returned home on Sunday evening, February 1, they found Juanita and their children unconscious. All three were hospitalized, but Juanita never regained consciousness and died of carbon monoxide poisoning twenty days later. The Flemings turned off the gas and called the gas company. Indiana Gas Company representative Dennis Arnold ("Arnold") arrived at the Flemings' home at approximately 7:20 p.m., vented the residence, and left on another call. When he returned at 10:00 p.m., Arnold turned on the gas for testing. Using a gas measurement instrument, Arnold measured the level of carbon monoxide in the Flemings' home at thirty-three parts per million ("ppm"). Arnold measured eighty-nine ppm at the furnace, but could not "pinpoint" the source of the carbon monoxide.[2]

On May 13, 1999, the Deuitches filed suit against the Flemings, alleging negligence and, alternatively, *res ipsa loquitur*.[3] Specifically, the Deuitches alleged that John had "negligently built, or caused to be built, [the Flemings' home] in such a manner which would allow carbon monoxide to accumulate in the Residence"; that John had "negligently installed, or caused to be installed, carbon monoxide producing appliances at the Residence in such a manner that carbon monoxide accumulated in the Residence"; and that the Flemings had "negligently vented, or caused to be vented, carbon monoxide from their appliances directly into the attic of the Residence." The Flemings filed their answer on May 26, 1999.

■ On November 1, 1999, the Flemings filed a motion for summary judgment.[4] In their supporting brief, the Flemings asserted that "no facts exist that would establish that Juanita Deuitch's death was proximately caused, or caused in fact, by any breach of any duty owed to her by [the Flemings]"; that the Deuitches could not identify the "specific defect or problem with any such appliance, ventilation system, or the structure of the home, in general, nor [could] they show that [the Flemings] possessed any knowledge of any such defective condition"; and that *res ipsa loquitur* did not apply as a matter of law.

On December 22, 1999, the Deuitches responded to the Flemings' summary judgment motion. The Deuitches designated, *inter alia*, two pages of a furnace manual that the Flemings had submitted in response to a discovery request, as well as the affidavit of Carl Denman ("Denman"), a consulting mechanical engineer retained by the Deuitches who had con-

---

**2.** In his deposition, Arnold explained his use of the term "pinpoint": "We have regulators with a vent on there, and we can put the hose up to the vent and it will tell us their seepage at that vent. A lot of times you can have gas around threads, and if it's not strong enough, it may not detect the gas there."

**3.** The Deuitches' *res ipsa loquitur* claim is not specifically labeled as such; rather, they allege that "the facts connected with Plaintiffs' claims are unknown to the Plaintiffs and are within the knowledge of the Defendants."

**4.** The Flemings spend approximately three pages of their appellate brief discussing Arnold's testimony and the testimony of House of Service furnace technician Lawrence Hutton ("Hutton"), despite their failure to designate much of this testimony in support of their summary judgment motion. In their brief, the Flemings cite to numerous pages of Arnold's and Hutton's depositions that they failed to cite in their reply to the Deuitches' response. It is well established that "[o]nly those portions of the record that were specifically designated to the trial court comprise the entire record for appellate review." *Bankmark of Florida, Inc. v. Star Fin. Card Svcs.*, 679 N.E.2d 973, 980 (Ind.Ct.App.1997). Hence, we may consider only those deposition pages specifically designated to the trial court.

ducted a "forensic investigation" of the furnace at their request.

The Flemings replied on January 6, 2000, and filed a motion to strike several of the Deuitches' designated evidentiary materials, including the furnace manual, for lack of verification, certification, or authentication. The Flemings also filed a motion to strike/motion in limine with respect to Denman's affidavit and requested a *Daubert*[5] hearing to evaluate the "scientific foundational principles" underlying the opinions expressed in the affidavit. In their response to the Flemings' motions, the Deuitches claimed that Denman's affidavit testimony was "simply a matter of observation by a person with specialized knowledge, not the application of a scientific principle," and thus *Daubert* did not apply. After a hearing, the trial court summarily granted the Flemings' motions to strike and motion for summary judgment on May 9, 2000.

### Discussion and Decision

■■■ "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Paint Shuttle, Inc. v. Continental Cas. Co.*, 733 N.E.2d 513, 518 (Ind.Ct.App.2000), *trans. denied.* When reviewing a grant of summary judgment, we apply the same standard as the trial court. *See id.* Summary judgment should be granted only if the designated evidentiary material[6] establishes that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law. *See id.*

On appellate review, we construe the pleadings, affidavits, and designated materials in a light most favorable to the non-movant. Where there are material disputed facts, or if undisputed facts give rise to conflicting reasonable inferences that affect the outcome, they must be resolved in favor of the non-movant. We give careful scrutiny to assure that the losing party is not improperly prevented from having its day in court. *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 104 (Ind.1997) (citations omitted).

■■■ "Summary judgment is rarely appropriate in negligence cases because '[i]ssues of negligence, contributory negligence, causation and reasonable care are more appropriately left for the determination by a trier of fact.'" *Ousley v. Board of Comm'rs of Fulton County*, 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied.* More importantly, "[u]nder Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 123 (Ind.1994). "Merely alleging that the plaintiff has failed to produce evidence on each element [of a cause of action] is

---

5. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also* Ind.Evid.R. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness ... shall be determined by the Court[.]").

6. In their summary judgment motion, the Flemings designated the Deuitches' complaint, John's 57–page deposition, Diana's 42–page deposition, "and any accompanying exhibits." This court has stated on more than

occasion that "designating pleadings, discovery material, and affidavits in their *entirety* fail[s] to meet the specificity required under [Indiana Trial Rule 56(C)]." *Plummer v. Board of Comm'rs of St. Joseph County*, 653 N.E.2d 519, 522 (Ind.Ct.App.1995), *trans. denied.* Since the Flemings' supporting brief contains more detailed references to the record, we shall conduct our review from this designated evidence. *See id.*

insufficient to entitle the defendant to summary judgment under Indiana law." *Id.*

"To recover upon a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of care which the defendant breached proximately causing injury." *Ousley,* 734 N.E.2d at 293. In the instant case, both parties acknowledge that Juanita was an invitee of the Flemings, who had a duty to exercise reasonable care for her protection while she was on their premises. *See Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991). Thus, the Flemings were liable for Juanita's injuries caused by a condition on their property, but only if they (a) knew or by the exercise of reasonable care would have discovered the condition, and should have realized that it involved an unreasonable risk of harm to Juanita; (b) should have expected that she would not have discovered or realized the danger, or would fail to protect herself against it; and (c) failed to exercise reasonable care to protect her against the danger. *See id.* at 640. "Before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Carmichael v. Kroger Co.,* 654 N.E.2d 1188, 1191 (Ind.Ct. App.1995), *trans. denied.*

In their motion for summary judgment, the Flemings asserted,

> In the present case, no facts exist that would establish that Juanita Deuitch's death was proximately caused, or caused in fact, by any breach of duty owed to her by [the Flemings]. All that is known and/or alleged by [the Deuitches] is that Juanita Deuitch died of carbon monoxide poisoning. Although [the Deuitches] speculate and allege that her death may have been caused by improper installation of various appliances and venting in the home and/or improper construction of the home itself, they have not pinpointed any single source of the carbon monoxide, nor have [the Deuitches] pinpointed how or why such carbon monoxide would be emitted into the home. In fact, [the Deuitches] have not pointed to any pre-existing conditions which would even tend to establish a defect on the property. The undisputed facts are that the [Flemings'] home had not experienced *any* carbon monoxide problems since the date that the furnace, water heater, and gas range were installed into the home. Simply put, the [Deuitches], by their own Complaint, only assume that the carbon monoxide emissions must have come from appliances in the home, and also only assume that Juanita Deuitch died due to negligence, in some respect, of the [Flemings]. At best, therefore, [the Deuitches] can establish that Juanita Deuitch died in the [Flemings'] home, but simply cannot connect the injuries to any identifiable source. Any attempt to do so would be high speculation, which is simply not allowed under Indiana law. As such, unless [the Deuitches] can establish and bring forth specific facts indicating a breach of any duty owed to Juanita Deuitch by [the Flemings], as well as injuries proximately caused by such a breach, the claims under premises liability must fail.

The Flemings further contended that the Deuitches could not "identify the specific defect or problem with any ... appliance, ventilation system, or the structure of the home, in general, nor [could] they show that [the Flemings] possessed any knowledge of any such defective condition." Here, the Flemings have not demonstrated the absence of a genuine issue of material fact, but instead have merely alleged that the Deuitches failed to present evidence on breach of duty and causation. Such an allegation is insufficient to entitle the

Flemings to summary judgment on these issues. *See Jarboe,* 644 N.E.2d at 123.

▮▮▮▮ We now turn to the Deuitches' claim of *res ipsa loquitur,* which

is a rule of evidence that allows a jury to draw an inference of negligence under certain factual circumstances. The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence. Although negligence may not be inferred from the mere fact that an injury occurred, it may be inferred from the circumstances surrounding the injury.

The central question involved in the use of the *res ipsa loquitur* doctrine is whether the incident more probably resulted from the defendant's negligence rather than from some other cause. The doctrine may be applied when the plaintiff establishes: 1) that the injuring instrumentality was within the exclusive management and control of the defendant ...; and, 2) the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. A plaintiff seeking to invoke the *res ipsa loquitur* doctrine may establish that the incident was more probably the result of negligence by relying on common sense and experience.

*K–Mart Corp. v. Gipson,* 563 N.E.2d 667, 669 (Ind.Ct.App.1990) (citations omitted), *trans. denied.* Here, the Flemings asserted that

res ipsa loquitur should not apply to this situation, for [the Deuitches] have not pinpointed the cause of the death of Juanita Deuitch, [the Deuitches] have not brought forth any facts to dispute the normal and efficient working condi-

tion of the appliances in the [Flemings'] home, and [the Deuitches] have brought forward no facts which would tend to give rise to an inference of negligence on the part of anyone involved with this case.

Again, simply alleging that the Deuitches have failed to produce any evidence on this issue is insufficient to sustain the Flemings' burden on summary judgment.

Our reversal in this case highlights the ironies that result from application of the *Jarboe* summary judgment standard. Here, the Deuitches have produced no evidence establishing that the Flemings knew or should have known of the defective condition that led to the carbon monoxide leak. Nevertheless, under *Jarboe* this is insufficient for a grant of summary judgment in the Flemings' favor. Instead, to prevail on their summary judgment motion the Flemings are required to negate the Deuitches' claim by disproving their knowledge. As the Flemings designated no evidence showing that they were unaware of the defect that resulted in the carbon monoxide leak, their motion must fail.

Initially, we note the difficulty of proving a negative, in this case the Flemings' lack of knowledge. Presumably, however, had the Flemings simply designated an affidavit wherein they stated that they did not know of the defective condition, the burden would then have shifted to the Deuitches to counter with a showing that the Flemings knew or should have known of the problem.[7] As the Deuitches have presented no evidence establishing the Flemings' knowledge, they could not have met this burden. Thus, it is ironic that

---

7. "Under Indiana's summary judgment standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe,* 644 N.E.2d at 123.

while the plaintiffs' failure to produce any evidence on a determinative issue is insufficient to warrant a grant of summary judgment in the defendants' favor, the defendants' mere designation of a self-serving affidavit may be sufficient to compel a different result.

The second irony of *Jarboe* is that if all the proof that the Deuitches have regarding the Flemings' knowledge is what they relied upon in countering the Flemings' motion for summary judgment, the Deuitches would not survive a motion for judgment on the evidence under Indiana Trial Rule 50. Thus, applying the standard as articulated in *Jarboe* permits a plaintiff who has no evidence supporting his claim to proceed to trial, thereby wasting the parties' time and money as well as judicial resources. One would hope that this anomaly would be addressed by the supreme court.[8]

Reversed and remanded.

BAKER, J., and BARNES, J., concur.

---

**8.** In his dissent from a denial of a petition to transfer in *Lenhardt Tool & Die Co., Inc. v. Lumpe,* 722 N.E.2d 824, 826–27 (Ind.2000), Justice Boehm recognized the need to clarify the standard for summary judgment under Indiana Trial Rule 56 and stated that the court should have granted transfer to do so. Joined by Chief Justice Shepard, Justice Boehm also stated that, in his view, summary judgment under Trial Rule 56 should not require that the movant prove a negative. *Id.* at 827. Rather, Justice Boehm felt that summary judgment should be granted in favor of the movant if the movant "either disproves an element of the non-movant's claim or demonstrates that the non-moving party cannot carry its burden of proof at trial." *Id.*