# FOR PUBLICATION



**FILED**

Mar 16 2012, 9:19 am

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BART M. BETTEAU**
Betteau Law Office, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**BRANDON W. SMITH**
**STANLEY O. FAITH**
Faith Ingle Smith LLC
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JACK MESSER,                               )
                                           )
    Appellant-Petitioner,              )
                                           )
        vs.                           )    No. 22A05-1104-MI-179
                                           )
NEW ALBANY POLICE DEPARTMENT,              )
                                           )
    Appellee-Respondent.               )

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Roger L. Duvall, Judge
Cause No. 22D02-1010-MI-2014

**March 16, 2012**

**OPINION – FOR PUBLICATION**

**May, Judge**

Jack Messer was a New Albany police officer who made a racially-charged remark while talking with other officers after roll call. The comment was leaked to the press. The New Albany Police Merit Commission found Messer's statement was conduct unbecoming an officer and suspended him. On judicial review, the trial court granted the New Albany Police Department's motion for summary judgment, finding there was no issue of fact as to whether Messer's conduct was unbecoming an officer and provided a basis for his discipline.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Messer, the non-moving party, are that Messer worked for the New Albany Police Department for twenty-seven years. The Department conducts roll call in an area where the public is not permitted, and matters discussed at roll call are not disseminated to the public. After formal roll call it was typical for small groups of officers to engage in private conversations and discuss matters they believed would never become public.[2]

---

[1] We heard oral argument February 8, 2012, at Silver Creek High School in Sellersburg. We thank the School for its hospitality and commend counsel on the quality of their advocacy.

[2] The Department includes in its statement of facts a number of citations to evidence favorable to the Department, and does not acknowledge much of the evidence favorable to Messer. For example, it cites testimony that things said at roll call were expected to be spread and repeated by officers, and Messer would not have reason to think his comment would remain private. On review of a summary judgment, we construe the pleadings, affidavits, and designated materials in a light most favorable to the non-movant, here, Messer. Where there are disputed material facts, or if undisputed facts give rise to conflicting reasonable inferences that affect the outcome, we resolve them in favor of the non-movant. *Deuitch v. Fleming*, 746 N.E.2d 993, 997 (Ind. Ct. App. 2001), *reh'g denied, trans. denied*.

After roll call in January 2010, Messer joined in a conversation with some other officers about public housing. During the conversation Messer said, "the biggest mistake that government made was giving those people civil rights." (App. at 126.) Other officers challenged Messer's statement, and Messer explained that he misspoke and did not mean what he said. No officer filed a complaint, and Messer's supervising officer did not believe a violation had occurred so he took no action.

Several days later the comment was leaked to the public. The Police Department conducted an internal investigation and cleared Messer of wrongdoing, but the Police Merit Commission issued a complaint. It found Messer's statement caused offense to members of the community, raised suspicions of racism in the Department, and was conduct unbecoming an officer. The Merit Commission suspended Messer for thirty days. Messer petitioned for judicial review, and the trial court granted the Department's motion for summary judgment.

## DISCUSSION AND DECISION

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Deuitch v. Fleming*, 746 N.E.2d 993, 997 (Ind. Ct. App. 2001), *reh'g denied, trans. denied*. When reviewing a summary judgment, we apply the same standard as the trial court. *Id.* Summary judgment should be granted only if the designated evidentiary material establishes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* On review, we construe the pleadings, affidavits, and

3

designated materials in a light most favorable to the non-movant. *Id.* Where there are material disputed facts, or if undisputed facts give rise to conflicting reasonable inferences that affect the outcome, they must be resolved in favor of the non-movant. *Id.* We give careful scrutiny to assure that the losing party is not improperly prevented from having its day in court. *Id.*

Messer argues his statement was speech protected by the First Amendment, so the Department should not have subjected him to discipline for making it. The parties agree the First Amendment question before us[3] is governed by the analysis in *Pickering v. Board of Education,* 391 U.S. 563, 566 (1968). In *Pickering,* the United States Supreme Court held the First Amendment protected a public school teacher who wrote a letter to a newspaper in which he criticized the allocation of school funds and the manner by which the school board raised such funds. *Pickering* did not establish a general constitutional standard applicable to all government-employee-speech cases, but held the government's interest as employer must be balanced on a case-by-case basis against the individual and societal First Amendment interests. *Love v. Rehfus*, 946 N.E.2d 1, 9 (Ind. 2011), *reh'g denied*.

*Pickering* provides a two-step analysis for determining whether the First

---

[3] Much of Messer's argument on appeal is based on the premise his remark was protected by the First Amendment, which premise the Department does not explicitly challenge. However, the Department argues Messer did not preserve the First Amendment issue for the trial court's review because he did not raise it before the Merit Commission.

Claims of a constitutional nature need not necessarily be presented to an agency as a precondition to judicial review. *Ind. Dep't. of Highways v. Dixon,* 541 N.E.2d 877, 882 (Ind. 1989). We decline to find waiver and choose to decide this appeal on the merits.

4

Amendment protects an employee's speech. First, the employee must have been speaking as a citizen on a matter of public concern. *Id*. The Department concedes Messer was speaking as a citizen on a matter of public concern. If the employee satisfies this threshold, a balancing test must be applied to determine if the government was justified in treating the employee differently from any other member of the general public. *Id.*

Even if an employee speaks as a citizen on a matter of public concern, the government employer can restrict the speech if it can prove the First Amendment interests of the employee and society are outweighed by the employer's interest in operational effectiveness and efficiency. *Id*. at 10. Government employees who speak as citizens on matters of public concern are subject only to speech restrictions that are necessary for their employers to operate efficiently and effectively. *Id*. Therefore, to justify a retaliatory action, the government must show the speech had the potential to disrupt the efficiency and effectiveness of its operations. *Id*.

Factors to consider in a *Pickering* balancing include (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform his responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general

5

public.  *Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000), *reh'g denied*, *cert. denied* 531 U.S. 1012 (2000) (cited in *Love*, 946 N.E.2d at 13).

The government employer must establish potential disruptiveness or harmful effects of the speech, but is not required to produce actual evidence of disruption.  *Id.* "Substantial weight is given to the government's reasonable predictions of disruption when it acts as an employer." *Id.* at 11.  The government employer does not need to wait for the actual disruption of the office and the destruction of working relationships to manifest before taking action.  *Id.*  Still, there must be evidence supporting the threat of harm to the government entity -- the government's concerns are not to be taken at face value.  *Id.*  Thus, mere allegations of disruption are not sufficient to sustain the government's burden of showing that the speech threatened the efficiency and effectiveness of its operations.  *Id.*

Applying the *Pickering* balance "is not an exercise in judicial speculation." *Id.* (quoting *Gustafson v. Jones,* 290 F.3d 895, 909 (7th Cir. 2002)).  Rather, courts must examine the ordinary or foreseeable effect of the conduct to determine whether it would be reasonably calculated to create division or to have impaired discipline.  *Id.*  The government must therefore provide sufficient evidence that the employee's speech had the potential to disrupt or harm its operations had the retaliatory action not been taken. *Id.*

If the government carries that burden, the nature and extent of the potential disruption must be weighed against the First Amendment value of the speech.  *Id.*  The

6

government's burden under *Pickering* varies depending on the nature of the employee's expression. *Id.* The stronger the First Amendment value of the speech, the stronger showing of harm the government must make to justify its action. *Id.*

In *Love*, a fire chief, Rehfus, terminated Love, a firefighter, for sending to a small group of citizens a private email supporting a candidate for township trustee. The candidate pledged that, if elected, he would hire a new fire chief. The chief believed Love's email contained false statements of fact regarding different issues involving the fire department and a public park. Chief Rehfus terminated Love's employment for "conduct unbecoming a firefighter and failure to be truthful." 946 N.E.2d at 7. Our Indiana Supreme Court found the email was constitutionally protected speech under the *Pickering* test.

> The Court noted competing interests:
>
> The government . . . has broader discretion to regulate the speech of its employees, because there are different interests at stake when it acts as employer than when it acts as sovereign. When the government acts as an employer, its interest "in achieving its goals as effectively and efficiently as possible" is given greater value. Similar to a private employer, the government must exercise some control over its employees' words and actions to fulfill its public duties. Thus, citizens who become government employees must accept certain limitations on their freedom.
> 
> Nevertheless, citizens who work for the government remain citizens and do not completely forfeit their fundamental liberties by virtue of their public employment. Moreover, there is a strong societal interest in allowing public employees to contribute their well-informed ideas and opinions to public debate.

*Id*. at 9 (citations omitted).

Messer's statement was more like that addressed in *City of Indianapolis v. Heath*,

7

686 N.E.2d 940 (Ind. Ct. App. 1997), *trans. denied*, and it was therefore permissible to discipline him for it. Heath, a police officer and leader of a militia group, was addressing a public meeting while dressed in a police uniform as a representative of the Indianapolis Police Department. He intentionally referred to Indianapolis Mayor Stephen Goldsmith as "Goldstein" while commenting on the Mayor's fiscal policies. The police chief told Heath his comments violated police rules and regulations because he had made anti-Semitic remarks about the Mayor, and Heath was demoted and suspended for thirty days.

The Merit Board affirmed. Heath then appealed to the Marion Superior Court. It reversed, finding the statement was protected speech, there was no evidence to support the Merit Board's finding Heath's conduct was detrimental to the efficient operation and the general discipline of the police department, the Merit Board did not show a compelling reason for the disciplinary action against Officer Heath when balanced against his free speech guarantees, and the decision was arbitrary and capricious. *Id*. at 942.

> We reversed the trial court and reinstated the Merit Board's decision:
>
> [W]hile we concede Officer Heath's right to make the remarks in question, the likely effect of the remarks on the Indianapolis Jewish community were, or should have been, obvious. Heath himself evinced knowledge of the potentially inflammatory nature of the remark by prefacing it with the comment, "I better not say it, ah well . . . ." *Record* at 9. This occurred while Heath was delivering, in his words, "an official talk . . . as a police officer," Merit Board Transcript at 68, in a public place while dressed in his police uniform. In view of the difficult and critical role played by the Indianapolis Police Department in the local community, and the importance of fostering confidence in and trust of that agency among members of the community, we conclude that the interest of the City of Indianapolis,

8

specifically the IPD, outweighed the interests of Officer Heath under the *Connick* [*v. Myers*, 461 U.S. 138, 145 (1983)] balancing test.

*Id.* at 945-46 (footnote omitted).[4]

Police departments are entitled to special deference under the *Pickering* analysis:

Deference to the employer's judgment regarding the disruptive nature of an employee's speech is especially important in the context of law enforcement. "[T]here is a particularly urgent need for close teamwork among those involved in the 'high stakes' field of law enforcement. Speech that might not interfere with work in an environment less dependent on order, discipline, and esprit de corps could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations."

*Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999) (quoting *Breuer v. Hart*, 909 F.2d 1035, 1040 (7th Cir. 1990)).

In *Kokkinis*, unlike in the case before us, the statements did not address a matter of public concern – they simply "expressed the plaintiff's personal opinion as to the Chief's vindictiveness." *Id*. at 844. Kokkinis appeared on a television news report on another officer's allegation of sex discrimination in the police department. Kokkinis, wearing a ski mask and with his voice electronically modified, said, "Everybody is so afraid of the Chief's vindictiveness. If you even dare to question any decision he makes, basically your life will be made miserable." *Id*. at 842. However, Kokkinis indicated in his interview did not know why the other officer had been treated differently when the Chief

---

[4] The *Connick* test is (1) the employee must be speaking on a matter of public concern about which free and open debate is vital to the decision making of the community; (2) the reviewing court must balance the interests of the employee, as a citizen, in commenting on matters of public concern and the State's interest, as an employer, in running an efficient operation; and (3) the employee's protected conduct must be a motivating factor in the State's decision to discipline the employee. 461 U.S. at 946 n.4.

ordered her to take an assignment that other officers had been allowed to decline. The Chief thought Kokkinis' comments were untrue and reflected negatively on the department. He viewed the broadcast as an embarrassment to himself and to the department as a whole and worried that the broadcast would adversely affect morale among the officers by undermining his efforts to build the department's esteem. *Id.*

Even if Kokkinis' speech had addressed a matter of public concern, the court found, his claim could not survive the *Pickering* analysis. *Id*. at 845. The speech at issue adversely affected harmony and loyalty among co-workers. Kokkinis' television appearance damaged his superiors' and fellow officers' confidence in him and potentially endangered their working relationships. The statements caused embarrassment to his superiors and co-workers and his relationships with them deteriorated after the broadcast. They believed his appearance cast a negative light on the department and made the department look like a "bunch of clowns" in the eyes of the surrounding communities. *Id*. at 846. "In sum, Mr. Kokkinis' superiors and co-workers thought that his television appearance was inappropriate and damaged the department's collective efforts to portray professionalism." *Id.*

Messer's speech similarly caused disruption to the Department. Messer was on duty and in uniform when he made the statement, and he was a member of the city council. He was not "anonymous or in the privacy of his own home," (Br. of Appellee at 12), and other officers heard the statement. The value of the speech was low – Messer later characterized it as "stupid" and acknowledged it offended some of the African-

American community. (App. at 314.) The statement brought a "potential to disrupt the efficiency and effectiveness of [the Department's] operations," *Love*, 946 N.E.2d at 10, and after it was disseminated in the media, it caused public outcry and damaged the relationship of the department with the African-American community and the general public.

Messer argues the Department did not meet its burden to show its interests in operational efficiency outweighed his First Amendment rights, as he "simply misspoke" in a private place where he had "every expectation the conversation would not go farther." (Br. of Appellant at 8.) He distinguishes *Heath*, where the offending comments were made in a public speech. In *Dixon*, our Indiana Supreme Court said "we think that it is important to note that Dixon's statements were made off-duty, in a private conversation. 'A purely private statement on a matter of public concern will rarely, if ever, justify discharge of a public employee.'" 541 N.E.2d at 881 (quoting *Rankin v. McPherson* 483 U.S. 378, 388 n.13 (1987), *reh'g denied*).

It does not appear, however, that Dixon's statements ever became public as did Messer's. The *Dixon* court accordingly found the Department of Highways did not show it was actually harmed by Dixon's statements. "The State has the burden of justifying the discharge on legitimate grounds. . . . The State cannot base a discharge on possible bad effects or potential harm. To justify its actions, it must make a stronger showing of harm or disruption." *Id.* at 881. While "the time, place and manner of the speech" is a factor to be considered in the *Pickering* analysis, *Greer*, 212 F.3d at 371, we decline Messer's

11

invitation to find determinative an employee's subjective belief the public would never become aware of his statement.

As there is no genuine issue of material fact as to whether Messer's statement had the potential to disrupt the efficiency and effectiveness of the Department's operations, *Love*, 946 N.E.2d at 10, we affirm the trial court.

Affirmed.

NAJAM, J., concurs.

BAKER, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JACK MESSER,                )
                               )

    Appellant-petitioner,     )
                               )

        vs.                )     No. 22A05-1104-MI-179
                               )

NEW ALBANY POLICE DEPARTMENT,   )
                               )

    Appellee-respondent.      )

**BAKER, Judge, dissenting.**

I respectfully dissent and part ways with the majority's decision to affirm the trial court's grant of summary judgment in favor of the New Albany Police Department (Department) as to Messer's thirty-day suspension.

As the majority acknowledges, the court in Greer v. Amesqua, 212 F.3d 358, 371 (7th Cir. 2000), applied the rationale espoused in Pickering v. Board of Education, 391 U.S. 563 (1968), and determined that the government must provide sufficient evidence that the employee's speech had the potential to disrupt or harm its operations had the retaliatory action not been taken. Slip op. at 5-6.

The cases that the majority cites and discusses upholding disciplinary or termination actions involved statements by the employees that were made public. See City of Indianapolis v. Heath, 686 N.E.2d 940, 945 (Ind. Ct. App. 1997) (holding that

13

discipline was warranted when the police officer, and leader of a militia group, was addressing the public while dressed in a police uniform as a representative of the Indianapolis Police Department and referred to Mayor Goldsmith as "Goldstein" while commenting on the mayor's fiscal policies).

In light of the circumstances here, I cannot agree that the Department met its burden of establishing that its interests in operational efficiency outweighed Officer Messer's First Amendment rights. Moreover, I agree with Officer Messer's contention that he had every expectation that his remarks would go no further. Unlike the circumstances in Heath, Officer Messer made these comments during a private conversation with the expectation that his comments would not be made public. Indeed, the fact that the comment became public was because it was leaked to the public. Officer Messer was speaking as a citizen about issues of public concern and when questioned by other officers regarding the civil rights of blacks, Officer Messer consistently maintained that he "misspoke," admitted that his statement was "stupid," and did not mean what he actually said. Tr. p. 165.

In sum, I do not believe that the Department successfully established that Officer Messer's comments had the potential to disrupt the efficiency and effectiveness of its operations. As a result, it is my view that Officer Messer's comment was protected by the First Amendment, and the trial court erred in granting the Department's motion for summary judgment.