## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2015, 9:15 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEYS FOR APPELLEES |
|---|---|
| Paul D. Ludwig | Attorneys for WR Dunkin & Son, Inc. |
| Redman Ludwig, P.C. | Danford R. Due |
| Indianapolis, Indiana | Scott E. Andres |
| | Due Doyle Fanning, LLP |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nathan Ferguson and Deanna Ferguson, | March 30, 2015 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 29A05-1401-CT-21 |
| v. | Appeal from the Hamilton Superior Court; The Honorable Steven R. Nation, Judge; 29D01-1110-CT-10575 |
| Shiel Sexton Company, Inc. d/b/a Shiel Sexton; WR Dunkin & Son Incorporated; Lynch, Harrison & Brumleve, Inc.; Alt & Witzig Engineering, Inc.; The Hagerman Group, Inc. d/b/a Hagerman Construction Company; Purdy Masonry, Inc.; SimplexGrinnell, L.P.; Poynter Sheet Metal, Inc.; Ermco, Inc.; Lithko Contracting, Inc., | |
| *Appellees-Defendants.* | |

**May, Judge.**

Nathan Ferguson was injured at a construction site in Carmel. He sued a number of contractors, and one, W.R. Dunkin & Sons, moved for and was granted summary judgment. Ferguson argues Dunkin had a duty toward him[1] and breached it.

We reverse and remand.

## Facts and Procedural History

Ferguson was an employee of General Piping, Inc., a contractor at the construction site of the Carmel Regional Performing Arts Center ("The Palladium"). In October 2009, Ferguson was traversing the worksite when an oriented strand board (OSB)[2] temporary walkway[3] placed on the worksite for use by project workers to gain access to their project work areas broke beneath him causing physical injuries, including an injury to his left knee. Where

---

[1] As there was a genuine issue of fact regarding whether Dunkin had a duty by virtue of its contract with Carmel, we need not address whether a duty also independently arose out of OSHA regulations.

[2] Oriented strand board (OSB) is a wood particle board manufactured from cross-oriented layers of thin wooden strips compressed and bonded together with wax and synthetic adhesives. http://en.wikipedia.org/wiki/Oriented_strand_board (last visited December 8, 2014).

[3] In its Statement of the Case, Dunkin "take[s] exception" to Ferguson's references to the place where he fell as a "temporary walkway" because it was in fact "merely some OSB board thrown over some wooden pallets." (Appellee's Br. at 1 n.2.) In support, Dunkin directs us to "(Appellant's App., pg. 77)." On that page of the appendix, Dunkin's own jobsite supervisor refers to the spot as a "temporary walkway" seven times, albeit in quotation marks each time.

Ferguson fell, someone had placed the OSB on top of some wooden pallets at a low point near an exit to the construction project.

[4] In his complaint Ferguson contended the OSB was unsuitable for use as a temporary walkway because it deteriorated from exposure to the weather and ultimately broke. He sued Dunkin,[4] a contractor on the project, and Dunkin moved for and was granted summary judgment on the ground it owed Ferguson no duty. Dunkin claimed it did not construct the walkway or place the OSB there, and it did not know who did. The walkway was not within the scope of Dunkin's work on the project and Dunkin did not direct Ferguson to use the walkway. In his deposition Ferguson testified he did not know who constructed the walkway and he was not aware of any facts that would indicate Dunkin did.

[5] Ferguson designated evidence in the form of a letter from Kristen Altice, counsel for the construction manager, Shiel Sexton, in which counsel said: "The walkway at issue was installed by another Prime Contractor, W.R. Duncan [sic] and Son, Inc." (Appellant's App. at 247.) When deposed, counsel said that based on Ferguson's representation he was injured on the temporary walkway, she "inquired as to the scope of the contractors, whether or not we had a contractor that temporary walkways would have fallen within their scope, and I was advised that, W.R. Dunkin, temporary walkways fell

---

[4] Ferguson sued a number of other contractors, but this appeal involves only the summary judgment for Dunkin.

within their scope." (*Id.* at 249.) Counsel later testified her earlier statement about Dunkin was not based on personal knowledge and she does not know who placed the OSB at that spot.

[6] In his deposition, Michael Anderson, Shiel's senior project manager, agreed "temporary walkways were the purview of W.R. Dunkin with respect to the contract." (*Id.* at 253.) However, he later stated that when he told Shiel's counsel the place where Ferguson was injured was a "temporary walkway" in Dunkin's "purview," he had not seen "any photos or anything of this particular walkway we're talking about." (Appellee's App. at 19.) The OSB placement, he then said, was different from the type of "temporary structure" for which Dunkin might have been responsible, and he did not know who put the pallets and OSB on the ground. (*Id.*)

[7] The trial court determined Ferguson had "not put forth any sufficient and/or admissible evidence, nor has the review of the contract established that Dunkin had a contractual duty to place or that they did actually place the OSB board and pallet so as to create a duty for Dunkin." (Appellant's App. at 37.)

## Discussion and Decision

[8] We review summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Drawing all reasonable inferences in favor of the non-moving parties, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

of law. *Id*. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed material facts support conflicting reasonable inferences. *Id*.

[9] Our summary judgment policies aim to protect a party's day in court. *Id*. While federal practice permits the moving party to merely show that the party carrying the burden of proof *lacks* evidence on a necessary element, we impose a more onerous burden -- to affirmatively negate an opponent's claim. *Id.* That permits summary judgment to "be precluded by as little as a non-movant's 'mere designation of a self-serving affidavit.'" *Id*. (quoting *Deuitch v. Fleming,* 746 N.E.2d 993, 1000 (Ind. Ct. App. 2001), *trans. denied*). Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial. *Id*. at 1003-04. We "consciously err[] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id*. at 1004.

[10] The initial burden is on the summary judgment movant to show there is no genuine issue of fact as to a determinative issue; the burden then shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. *Id*. The non-moving party has the burden on appeal of persuading us that summary judgment was erroneous, but we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court. *Id*.

[11]  A negligence action is generally not appropriate for disposal by summary judgment. *Kincade v. MAC Corp.,* 773 N.E.2d 909, 911 (Ind. Ct. App. 2002). A defendant in a negligence action, however, may obtain summary judgment when the undisputed facts negate at least one element of the plaintiff's claim. *Id*.

[12]  To prevail on a claim of negligence the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010). Absent a duty there can be no negligence or liability based on the breach. *Id.* Whether a duty exists is a question of law for the court to decide. *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004). Sometimes, however, the existence of a duty depends on underlying facts that require resolution by the trier of fact. The trial court must determine if an existing relationship gives rise to a duty, but a factual question may be interwoven with the determination of the existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact. *Id*. There is a genuine issue whether Dunkin had a duty toward Ferguson that arose out of Dunkin's contract with Carmel.

[13]  A duty of care, the breach of which will support a negligence action, may arise contractually. *Plan–Tec, Inc. v. Wiggins,* 443 N.E.2d 1212 (Ind. Ct. App. 1983). In interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to

express their rights and duties. *First Fed. Sav. Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind. 1990).

[14] Ferguson contends Dunkin, as a contractor at the worksite, had a duty to abide by OSHA regulations, citing a provision whereby Dunkin agreed to comply with "all present and future federal, state and local laws, executive orders, rules, regulations, codes and ordinances which may be applicable" to Dunkin's performance under the contract. (Appellant's App. at 284.) He argues Dunkin's duty to him arose from the contract because OSHA requirements are federal regulations.

[15] Under the OSHA Multi-Employer Citation Policy, OSHA Instruction CPL 2-0.124 (1999), employers on multi-employer worksites have a duty to protect all employees, whether their own employee or the employee of another, from hazardous conditions at a work site. An OSHA standard cannot be used to expand an existing common law or statutory duty, or be used as evidence of an expanded duty of care, *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 368 (Ind. Ct. App. 2002), but the question before us is whether a duty arose contractually.

[16] A provision in an attachment to the contract, Carmel's "Standard General Conditions for Construction Contractors 1997," (App. at 107), states "CONTRACTOR shall give all notices and comply with all Laws and Regulations in effect during the furnishing and performance of the Work." (*Id.* at 125.) Section 6.20.1 of that document provided:

CONTRACTOR shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work and shall take all necessary precautions for the safety of, and provide the necessary protection to prevent damage, injury or loss to (i) all employees on the Work and other persons and organizations who may be affected thereby, (ii) all the Work and all materials or equipment to be incorporated therein, whether in storage on or off the site, and (iii) other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures, utilities and Underground Facilities not designated for removal, relocation or replacement in the course of construction.

(*Id*. at 127.)

[17] There is an issue of fact whether Dunkin might have had a duty toward Ferguson as a "creating" or "exposing" employer." Under OSHA's Multi–Employer Citation Policy, a "creating employer" is "[t]he employer that caused a hazardous condition that violates an OSHA standard." CPL 2-0.124; Appellant's App. at 194.) An "exposing employer" is one "whose own employees are exposed to the hazard." *Id*.

[18] There is an issue of fact whether Dunkin had something "to do with placing or maintaining the alleged temporary walkway at the location where Nathan Ferguson alleges that he was injured," and might therefore have been a "creating employer," or whether Dunkin might have been an "exposing employer," *i.e.*, one "whose own employees are exposed to the hazard."

[19] There was evidence before the trial court that Dunkin was responsible, at the time of Ferguson's injury, "for the maintenance of the access points to the interior of the building under construction." (Appellee's App. at 15.) There was evidence an exhibit shown to a witness, which appears from the context of

the testimony to be a photo of the location where Ferguson was injured[5] "depicts one of those access sites." (*Id.*) There was also evidence before the court in the form of deposition testimony by Michael Anderson, Shiel's senior project manager. Anderson testified "temporary walkways were the purview of W.R. Dunkin with respect to the contract," (Appellant's App. at 253), and when shown what appears from the exchange between Anderson and counsel to be a photo of the place where Ferguson fell, he stated the area appeared to him to be a temporary walkway.[6] (*Id.*)

[20] Ferguson also designated evidence in the form of a letter from Altice, counsel for the construction manager, Shiel Sexton, in which she said: "The walkway

---

[5] In questioning Anderson, Shiel's senior project manager, counsel asked "does it not appear that Exhibit E depicts one of those access sites?" and Anderson replied "[i]t appears to definitely be an access site," and he replied "yes" when asked "if it's at the Palladium, it would be one of its access sites?" (Appellee's App. at 15.) The record before us includes at least two Exhibits "E," but neither that we located includes a photograph or other "depiction" of an area.

[6] Dunkin either does not acknowledge much of this evidence or dismisses it as "out-of-context." (Appellee's Br. at 4.) We remind Dunkin's appellate counsel that Indiana Appellate Rule 46(A)(6)(a) and (b) require that the facts included in a brief be stated in accordance with *the standard of review appropriate to the order being appealed*. On review of a summary judgment, we accept as true those facts alleged by the non-moving party, we construe the evidence in favor of the non-moving party, and we resolve all doubts against the moving party. *Sees v. Bank One, Indiana, N.A.,* 839 N.E.2d 154, 160 (Ind. 2005).

Dunkin's statement does not comply with that standard, as it is rife with argument and is not stated in a light favorable to Ferguson, the non-moving party. For example, Dunkin points to Ferguson's references to the "discredited Altice letter," (Appellee's Br. at 4), and states as "facts" that Ferguson cited to Anderson's deposition testimony "in a completely out-of-context manner," (*id.*), and "[a]mazingly, Ferguson continues to brazenly disregard" certain testimony. (*Id.* n.1.)

We prefer to decide cases on their merits, and we choose to do so in this case. But we remind counsel that an argument on appeal is waived where noncompliance with the rules of appellate procedure is so substantial it impedes our consideration of the argument. *Perry v. Anonymous Physician 1*, __ N.E.3d __, 2014 WL 7335018, at *3 n.1 (Ind. Ct. App. Dec. 24, 2014).

at issue was installed by another Prime Contractor, W.R. Duncan [sic] and Son, Inc." (Appellant's App. at 247.)  When deposed, counsel said that based on Ferguson's representation he was injured on the temporary walkway, she "inquired as to the scope of the contractors, whether or not we had a contractor that temporary walkways would have fallen within their scope, and I was advised that, W.R. Dunkin, temporary walkways fell within their scope." (*Id.* at 249.)  Counsel later testified her earlier statement about Dunkin was not based on personal knowledge and she does not know who placed the OSB at that spot.[7]

[21]  We acknowledge both Altice and Anderson qualified their statements that indicated Dunkin might be responsible for the area where Ferguson was injured, but that does not mean there is no longer any issue of fact regarding Dunkin's duty toward Ferguson.  We addressed such inconsistencies in

---

[7] Dunkin asserts

> [a]ny confusion about whether or not Shiel believed that WR Dunkin might have been responsible for the OSB/pallet path was cleared up when Kris Altice of Shiel acknowledged under oath that, based on new evidence, she could no longer stand by her earlier representation about WR Dunkin playing a role in the incident.

(Appellee's Br. at 8.)  Dunkin complains of Ferguson's "continued insistence on citing to the discredited Altice letter." (*Id.*)

As explained below, we decline Dunkin's invitation to disregard that evidence of record.  *See Chevron U.S.A. Inc. v. Lazarus*, 1995 WL 656692, at *1 (E.D. La. Nov. 6, 1995), where Lazarus sought summary judgment on grounds that Chevron's only evidence Lazarus' claim was fraudulent and the accident prefabricated, the sworn deposition testimony of one Ronald Hillard, "had been destroyed by Mr. Hillard's subsequent sworn statement" that retracted Hillard's prior sworn testimony.  Chevron argued Hillard's "prior sworn testimony, despite his current attempt to recant, is part of the record and creates a genuine issue of material fact.  The Court agrees." *Id.*

testimony in *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 232 (Ind. Ct. App. 2014), *trans. denied*.  Two Martinsville students, C.J. and B.K., were injured during a school shooting by former student Michael Phelps.  Both sued the Martinsville School District, alleging it breached its duty to keep them safe.  The School District moved for summary judgment, which the trial court denied.

[22]   The School District argued summary judgment was appropriate because it could not have foreseen that Phelps would come to the school to shoot C.J.  It argued an affidavit of C.H., Phelps' and C.J.'s classmate, was insufficient to create a genuine issue of fact.  During a 2011 deposition taken in criminal proceedings against Phelps, C.H. had testified she did not learn of Phelps' plan to shoot C.J. until she saw Phelps' Facebook status on the morning of the shooting.  She also testified that, prior to the shooting, she never notified the school's Principal that Phelps planned to shoot C.J.

[23]   But in a 2012 affidavit C.H. stated she had learned of Phelps' plan sometime before the day of the shooting, and she "went to [the Principal] and told her there was going to be a shooting, but [the Principal] said [C.H. was] nothing but a liar . . . she said that in her whole school career she never saw a shooting and she was never going to see one." *Id*. at 244.  The School District asked the trial court to strike the affidavit on the ground a non-movant may not create issues of fact by pointing to affidavit testimony that contradicts the witness' sworn testimony in a prior deposition.

[24] We found the School District's argument "misguided":

> The principles the School District cites do not apply to the use of C.H.'s affidavit. While it is true that our courts have held that "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant," *Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314 (Ind. 1983), the stated purpose for this rule is to "prevent *a party* from generating its own genuine issue of material fact by providing self-serving contradictory statements without explanation." *Crawfordsville Square, LLC. v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 939 (Ind. Ct. App. 2009) (emphasis added) [, *trans. denied*]. Here, it is the deposition and affidavit of a *non-party* witness that allegedly conflict. Furthermore, the deposition with which C.H.'s affidavit allegedly conflicts occurred within a different case altogether, Phelps's criminal proceeding. Therefore, it is not likely the case that C.H. made contradictory statements in a self-serving attempt to avoid a damaging admission she made in a deposition in a separate proceeding.

*Id*. at 245-46. Under those circumstances, we concluded "the question of whether the shooting was foreseeable to the School District is one that is best resolved by the trier of fact rather than through summary judgment." *Id*. at 246.

[25] The same is true in the case before us. Both Anderson and Altice offered statements that contradicted, or at least qualified, their earlier statements, but their later statements obviously were not made to generate a "genuine issue of material fact by providing self-serving contradictory statements without explanation." As in *Jackson*, we believe the questions whether the place where Ferguson was injured was a "temporary walkway," whether Dunkin was a "creating" or "exposing" employer, or whether Dunkin otherwise had a duty toward Ferguson arising out of its involvement with or control over the OSB

placement "is one that is best resolved by the trier of fact rather than through summary judgment." We must therefore reverse summary judgment for Dunkin and remand for further proceedings.

[26] Reversed and remanded.

Vaidik, C.J., concurs in result without opinion. Friedlander, J., dissents with opinion.

Nathan Ferguson and Deanna Ferguson,

*Appellants-Plaintiffs,*

v.

Shiel Sexton Company, Inc. d/b/a Shiel Sexton; WR Dunkin & Son Incorporated; Lynch, Harrison & Brumleve, Inc.; Alt & Witzig Engineering, Inc.; The Hagerman Group, Inc. d/b/a Hagerman Construction Company; Purdy Masonry, Inc.; SimplexGrinnell, L.P.; Poynter Sheet Metal, Inc.; Ermco, Inc.; Lithko Contracting, Inc.,

*Appellees-Defendants.*

March 30, 2015

Court of Appeals Case No. 29A05-1401-CT-21

Appeal from the Hamilton Superior Court; The Honorable Steven R. Nation, Judge; 29D01-1110-CT-10575

**Friedlander, Judge, dissenting.**

I believe the trial court correctly granted summary judgment in favor of WR Dunkin & Son, Inc. (Dunkin), and therefore respectfully dissent. Dunkin's liability hinges on this question: Was Dunkin responsible for constructing the walkway where Ferguson was injured, whether as a creating employer or exposing employer? The majority cites two sources of evidence indicating

Dunkin was a creating employer with respect to the placement of the temporary walkways, thus rendering summary judgment inappropriate.

[28]  Michael Anderson, general contractor Shiel's senior project manager, testified in a deposition that temporary walkways, including the one in question, were within Dunkin's purview.  He evidently had passed this information along to Kristin Altice in response to her request as to whether temporary walkways would have fallen within the scope of one of the project's contractors.  In turn, Altice included this information in a letter to Ferguson, i.e., that the walkway at issue was within Dunkin's purview.  The majority concludes that these representations by Anderson and Altice were sufficient to create a question of fact as to whether Dunkin was responsible for the temporary walkway.  In so doing, the majority discounts the effect of later representations by Altice and Anderson that contradict their earlier assertions on this subject.

[29]  Anderson later stated that when he responded to Altice's original inquiry, he had not seen photos of the particular walkway in question.  Upon viewing such photos, Anderson changed his answer and concluded that the OSB placement was not the type of temporary structure for which Dunkin might have been responsible.  He went on to state that he did not know who was responsible for the structure on which Ferguson was injured.   Similarly, Altice later testified that her statement identifying the temporary walkway in question as within Dunkin's purview was not based on personal knowledge.  It seems clear that her answer was based upon Anderson's original, as it turns out mistaken,

identification of Dunkin as the responsible party. She also later claimed that she did not know who placed the OSB at that spot.

[30] Upon these facts, Anderson's and Altice's later testimony on this all-important question cannot be said to stand in contradiction to their earlier answers, thus creating a question of fact. Rather, they must be viewed as corrections made after being apprised of more complete information. Thus, as I see it, on the state of the record as it currently exists, Anderson and Altice both are of the view that Dunkin had no contractual duty with respect to the temporary walkway on which Ferguson was injured, and neither knows who actually constructed that walkway. Accordingly, there is no evidence to support the imposition of a duty on Dunkin with respect to Ferguson's injury on the temporary walkway. I would affirm the trial court in all respects.